UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DEANNA GAYE WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:16-CV-79-HBG |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 18]. Now before the Court is the Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 15 & 16] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 21 & 22]. Deanna Gaye Williams ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner").

On June 21, 2012, the Plaintiff filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), claiming a period of disability which began June 1, 2012. [Tr. 189-201]. After her application was denied initially and upon reconsideration, the Plaintiff requested a hearing. [Tr. 140-144, 148-154]. On July 3, 2014, a hearing was held before the ALJ to review determination of the Plaintiff's claim. [Tr. 46-77]. On September 18, 2014, the

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this case.

ALJ found that the Plaintiff was not disabled. [Tr. 28-45]. The Appeals Council denied the Plaintiff's request for review [Tr. 1-5]; thus, the decision of the ALJ became the final decision of the Commissioner.

Having exhausted her administrative remedies, the Plaintiff filed a Complaint with this Court on February 16, 2016, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insure status requirements of the Social Security Act through December 31, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity since June 1, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: osteoarthritis, neuropathy, and mild degenerative disc disease (20 CFR 404,1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can occasionally perform all postural activities, except she can never climb ladders, ropes or scaffolds.
>
> 6. The claimant is capable of performing past relevant work as an administrative assistant, an office manager, and a real estate

property manager. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2012, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 33-40].

## II. DISABILITY ELIGIBILITY

This case involves an application for DIB and SSI benefits. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1). To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see 20 C.F.R. §§ 404.1505(a), 415.905(a).

3

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. *Id.* The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are

supported by substantial evidence in the record, his decision is conclusive and must be affirmed. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations omitted).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citing *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir. 1971)).

5

## IV. POSITIONS OF THE PARTIES

The Plaintiff submits that the ALJ inappropriately adjudicated the Plaintiff's case. [Doc. 16 at 22]. The Plaintiff states that the treating physician rule was completely ignored and the longitudinal records of neurologist Timothy K. Braden, M.D., and family physician Jeffrey Drinnen, M.D., were summarily rejected. [*Id.*].

The Commissioner responds that the ALJ considered and weighed the medical opinions of the Plaintiff's treating physicians Drs. Braden and Drinnen in conjunction with all other relevant evidence. [Doc. 22 at 13]. The Commissioner states that the ALJ found that neither of these medical opinions was entitled to controlling weight and that "good reasons" were given. [*Id.*].

The Plaintiff filed a reply asserting that the Commissioner does not argue or suggest that the ALJ followed all mandatory requirements when she weighed the treating physicians' opinions. [Doc. 23 at 2]. The Plaintiff contends that Dr. Braden based his medical opinion on the medical file, progress and office notes, and numerous physical examinations of the Plaintiff and not solely on the Plaintiff's self-report, as suggested by the ALJ. [*Id.*].

## V. ANALYSIS

The Plaintiff argues that the ALJ failed to give controlling or adequate weight to the Plaintiff's treating neurologist Dr. Braden and treating family physician Dr. Drinnen.

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R. §§

6

404.1527(c)(2), 416.927(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. *Id.*

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. *Id.* A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). Nonetheless, the ultimate decision of disability rests with the ALJ. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Sullenger v. Comm'r of Soc. Sec.*, 255 Fed. App'x 988, 992 (6th Cir. 2007).

The Court will address the medical opinions of Drs. Braden and Drinnen in turn.

### A. Neurologist Dr. Timothy Braden, M.D.

The Plaintiff has been a patient of Dr. Braden since November 2010. Dr. Braden provided treatment for lumbar radiculopathy and restless leg syndrome and concern for possible inherited neuropathy based on progressive symptoms of pain, numbness, and lower extremity musculature thinning. On June 26, 2014, Dr. Braden completed a "Physical Residual Function Capacity Medical Source Statement," wherein he responded to a variety of short-answer and multiple choice questions regarding the Plaintiff's impairments. [Tr. 569-573]. Dr. Braden stated that the Plaintiff suffers from radiculopathy and suspect inherited neuropathy which caused significant pain in the

7

Plaintiff's feet, legs, and hips with numbness. [*Id.*]. As a result, Dr. Braden opined that the Plaintiff: could lift and/or carry between five and ten pounds rarely; would need to lie down and/or recline about three hours in an eight-hour work day; could stand and/or walk less than one hour in an eight-hour work day; requires the use of a cane or other assistive device while engaged in occasional standing or walking; and, does not have the ability to climb stairs, ladders, scaffolds, ropes, or ramps. [*Id.*]. In addition, Dr. Braden stated that the Plaintiff suffers from depression and anxiety. [*Id.*]. Dr. Braden opined that the Plaintiff would be "off task," unable to perform work and/or away from the work environment, more than 30% of an eight-hour work day. [*Id.*]. Dr. Braden concluded that the Plaintiff would be unable to retain work in a competitive work environment at eight hours per day, five days a week for a continuous period of six months or more. [*Id.*].

The ALJ gave Dr. Braden's opinion little weight. [Tr. 38]. The ALJ gave the following reasons:

> (1) his opinions are totally disproportionate to objective evidence; (2) there is no objective evidence of any back impairment that could cause radiculopathy; (3) his treatment, i.e., multiple high dose narcotics, is not consistent with the objective evidence, particularly the results of the lumbar spine MRI study; (4) "Suspected inherited neuropathy" is not a proper diagnosis; (5) under his residual functional capacity, the claimant would be bedridden, but this is inconsistent with the claimant's activities, as reported to Dr. Denny; (6) there is nothing to support his opinion that the claimant must lie down three house during the day or that she needs constant one to three hour breaks to lie down, except the claimant's self-report; (7) answers to questions 16, 17, 18, 19, and 20 are speculation (or based upon the claimant's self-reports) as he has no personal knowledge of any of this and those opinions are pure speculation; and (8) he opines on matters that are reserved to the Commissioner of Social Security.

8

[*Id.*]. [2]

The Plaintiff argues that the ALJ failed to state what objective evidence was disproportionate to Dr. Braden's opinion. [Doc. 16 at 12-13]. The Plaintiff contends that any subsequent reviewer is left to speculate as to what evidence the ALJ is referencing in assigning Dr. Braden's medical opinion little weight. [*Id.*]. The Commissioner responds that the ALJ discussed the objective evidence was disproportionate to Dr. Braden's medical opinion earlier in her decision in connection with the other evidence in the record and that the ALJ is not required to restate the evidence again. [Doc. 22 at 17].

The Court finds that substantial evidence supports the ALJ's finding. The Court is able to look at other portions of the ALJ's decision to identify the evidence which the ALJ refers to when discounting the treating physician's opinion. *Fields v. Colvin*, No. 3:13-CV-142, 2014 WL 4954599, at *4 (E.D. Tenn. Sept. 30, 2014). The ALJ cited to specific evidence which contradicts or conflicts with the medical opinion of Dr. Braden and is therefore not entitled to controlling weight. The ALJ cited to the results of electromyography and nerve conduction studies which were performed on March 21, 2012, and were consistent with chronic L4-S1 radiculopathy and peroneal neuropathy on the left. [Tr. 36 (citing Tr. 558)]. These results showed no significant change from a prior study which was performed on November 24, 2010. [*Id.*] The Plaintiff was working at a substantial gainful activity level in 2011 and 2012, despite her impairments. [Tr.

---

[2] Questions 16-20 refer to the Plaintiff's limitations in regard to: what percentage of an eight-hour work day in a competitive work environment the Plaintiff would be "off-task;" on average, how many days per month the Plaintiff is likely to be absent from work; on average, how many days per month the Plaintiff is likely to be unable to complete an eight-hour work day; compared to an average worker, how efficient could the Plaintiff be expected to perform a job, eight hours per day, five days per week on a sustained basis; and, if the Plaintiff is unable to obtain and retain work in a competitive work environment, eight hours per day, five days per week for a continuous period of six months or more.

9

552-568]. The ALJ also cites to a MRI study of the lumbar spine performed on January 5, 2011, and showed mild generative disc disease but no focal disc protrusions, spinal stenosis, or nerve root impingement. [*Id.* (citing Tr. 565)]. Last, the ALJ cited to the generally benign examinations of the Plaintiff, including when she was examined by consultative examiner Jeffrey Summers, M.D., in August 2012. [Tr. 37]. During this examination, Dr. Summers found that while the Plaintiff had a decreased range of motion at the lumbar spine, the straight leg raise testing was negative in the seated and supine positions, she ambulated in a normal manner with an upright posture, and she did not require the use of an orthotic device. [*Id.* (citing Tr. 496-497)].

The Plaintiff also argues that the ALJ "plays doctor" in a few of her findings, including: that there was no objective evidence of any back impairment that could cause radiculopathy; that Dr. Braden's treatment with high dose narcotics is not consistent with the objective evidence; and, that suspected inherited neuropathy was not a proper diagnosis. [Doc. 16 at 13-14]. The Commissioner responds that resolving conflicts in the evidence is not synonymous with "playing doctor" but is instead one of the primary roles of the ALJ. [Doc. 22 at 19]. The Commissioner argues that the ALJ can appropriately consider the prescribed treatment by a treating physician and whether it was consistent with the other evidence of the record. [*Id.*].

The Court observes that "[t]he 'playing doctor' prohibition comes into play when the ALJ 'either reject[s] a doctor's medical conclusion without other evidence [or] draw[s] medical conclusions [herself] about a claimant without relying on medical evidence.'" *Russel v. Colvin*, No. 3-15-CV-456-TAV-CCS, 2017 WL 627458, at *7-8 (E.D. Tenn. Jan 18, 2017), *report and recommendation adopted*, No. 3:15-CV-456-TAV-CCS, 2017 WL 627448 (E.D. Tenn. Feb. 15, 2017) (quoting *Hill v. Astrue*, No. 5:12-CV-72-R, 2013 WL 3292657, at *3 (W.D. Ky. June 28, 2013)) (internal citations omitted). That is not the case here. The ALJ cited multiple reasons,

10

supported by the record, for discounting Dr. Braden's opinion.

The ALJ identified that the MRI scan showed mild degenerative disc disease and included it as a severe impairment, but also noted that Dr. Braden's medical opinion was only based on a diagnosis of inherited neuropathy and suspect inherited neuropathy. [Tr. 38-39]. The ALJ examined the objective diagnostic test results and compared those results with the prescribed treatment of Dr. Braden to determine that the treatment with high dose narcotics was not consistent with those test results. [*Id.*]. Lastly, the ALJ determined that suspected inherited neuropathy was not a proper diagnosis because the diagnosis was never confirmed by Dr. Braden but was only suspected. [*Id.*].

The Plaintiff additionally argues that under Dr. Braden's residual functional capacity ("RFC"), the Plaintiff would not be bedridden. [Doc. 16 at 14]. The Plaintiff contends that Dr. Braden opined that the Plaintiff could sit three hours in an eight-hour work day, stand and walk less than one hour in an eight-hour work day, and would need to lie down or recline three hours in an eight-hour work day, none of which would render the Plaintiff bedridden. [*Id.*]. The Plaintiff further contests the ALJ's determination that there is nothing to support Dr. Braden's opinion that the Plaintiff must lie down three hours during the day or that she needs constant one to three hour breaks except for the Plaintiff's self-report. [*Id.*] The Commissioner responds that the ALJ considered three hours in bed each day to be bedridden and that the Plaintiff's argument is semantics about the meaning of the word bedridden. [Doc. 22 at 20-21]. The Commissioner contends that the ALJ found Dr. Braden's opinion that the Plaintiff would need to lie down three hours during the day or that she needs constant one to three hour breaks was inconsistent with the other evidence of record and was only supported by the Plaintiff's self-report, which the ALJ did not find credible. [*Id.* at 21].

11

The Court finds the ALJ properly considers the consistency and supportability of Dr. Braden's medical opinion with the other evidence of record. The ALJ found that while Dr. Braden's medical opinion was supported, at least in part, by the Plaintiff's self-report, it was inconsistent with the objective diagnostic test results, including electromyography and nerve conduction studies and a lumbar spine MRI study. [Tr. 39]. Because the ALJ is charged with resolving conflicts in the record, the Court finds that the ALJ could reasonably conclude that the findings expressed by Dr. Braden was not supported by his treatment notes. *See Leeman v. Comm'r of Soc. Sec.*, 449 F. App'x 496, 497 (6th Cir. 2011) ("ALJs may discount treating-physician opinions that are inconsistent with substantial evidence in the record, like the physician's own treatment notes."). The ALJ considered the prescribed treatment by Dr. Braden and whether it was consistent with the other evidence of record before coming to a conclusion that Dr. Braden's medical opinion was not consistent with the evidence of record. Moreover, the Court finds the ALJ's determination that the Plaintiff would be bedridden was reasonable given Dr. Braden's limitation that the Plaintiff would be required to lie down at least three hours a day.

The Plaintiff further contends that Dr. Braden's answer to questions 16-20 of his Medical Source Statement, in which the ALJ found the responses to be speculative, was speculation on the part of the ALJ. [Doc. 16 at 15]. The Commissioner responds that the ALJ had specifically identified the factors that undermined Dr. Braden's opinion on these matters. [Doc. 22 at 22].

The Court finds that the ALJ's decision identified the factors she considered to undermine Dr. Braden's answers to questions 16-20 in her Medical Source Statement. [Tr. 36-38]. In support of the ALJ's finding that Dr. Braden's answers to these questions were speculative, the ALJ stated that the objective diagnostic test results did not support the limitations in Dr. Braden's Medical Source Statement. The ALJ further stated that while the answers to these questions were consistent

12

with the Plaintiff's self-report, there was no other evidence in the record which would explain the limitations opined by Dr. Braden.

The Plaintiff also alleges that the ALJ failed to identify which portion of Dr. Braden's opinion touches on matters reserved for the Commissioner. [Doc. 16 at 15]. To the contrary, the ALJ observed that Dr. Braden completed multiple life insurance forms for the Plaintiff wherein he opined that the Plaintiff was totally disabled and "unable to work due to constant pain." [Tr. 38 (citing Tr. 552-558)]. The Medical Source Statement also opined that the Plaintiff was unable to work. [Tr. 572]. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d) (opinions on whether a claimant is "disabled" or "unable to work" are "not be given any special significance" because whether an individual meets the statutory definition of disability is an issue strictly reserved for the Commissioner). The Plaintiff states that even if a treating physician offers an opinion on a matter reserved for the Commissioner, the entire Medical Source Statement is not invalidated and is still relevant. [Doc. 16 at 15]. The ALJ, however, did not reject Dr. Braden's opinion on this basis alone but provided numerous other reasons for assigning the opinion little weight.

Finally, the Plaintiff argues that in declining to give Dr. Braden's Medical Source Statement controlling weight, the ALJ was then required, but failed, to apply the factors set forth in 20 C.F.R. §§ 404.1527(c), 416.927(c) to determine what weight should be given to a physician's medical opinion. [Doc. 16 at 17]. Specifically, the Plaintiff contends that the ALJ failed to note or consider Dr. Braden's: length of treatment; the frequency of these examinations over the time span of treatment; the nature and extent of the treating relations; and, that Dr. Braden's opinions are supported by objective evidence and are consistent. [*Id.*].

To the extent that the Plaintiff argues that every regulatory factor must be discussed, the Court disagrees. Nothing within sections 404.1527(c)(1)-(6) and 416.927(c)(1)-(6) mandates that

13

every factor – the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, the specialization of the source, and any other factors which tend to support or contradict the opinion – be explicitly discussed. *See McClain-Nelson v. Comm'r of Soc. Sec.*, No. 12-14490, 2014 WL 988910, at *7 (E.D. Mich. Mar. 13, 2014) ("[A]n ALJ is not required to discuss every factor listed in 20 C.F.R. § 404.1527[(c)]."); *Buchert v. Comm'r of Soc. Sec.*, No. 3:13-CV-01418, 2014 WL 1304993, at *7 (N.D. Ohio Mar. 27, 2014) (holding same). Simply because an ALJ does not recite the regulatory factors does not mean that she failed to consider them. *Fields*, 2014 WL 4955499, at *4 (citing *Works v. Astrue*, No. 3:09–50–DCR, 2010 WL 4510915, at *4 (E.D.Ky. Nov.1, 2010)). The ALJ need only considered the regulatory factors in determining the appropriate weight.

The ALJ specifically addressed several of the regulatory factors, including the length and frequency of the treatment, the nature and extent of the treatment relationship, and the supportability and consistency of Dr. Braden's opinion. [Tr. 36-39]. The ALJ recognized that the Plaintiff had been treated by Dr. Braden since 2010 and saw him every three months. [Tr. 36]. The ALJ specifically identified Dr. Braden as the Plaintiff's treating neurologist in her decision. [*Id.*]. The ALJ also found that Dr. Braden's opinions were not supported by objective evidence and identified the evidence that was inconsistent with Dr. Braden's opinion. [Tr. 36-38]. Therefore, the Court finds that the ALJ properly considered the regulatory factors in determining the appropriate weight Dr. Braden's opinion was due.

Accordingly, the Plaintiff's assignment of error in regard to the weight given to Dr. Braden's medical opinion is not well-taken.

## B. Family Physician Dr. Jeffrey W. Drinnen, M.D.

Dr. Drinnen is the Plaintiff's primary care provider and has treated the Plaintiff for approximately ten years for her anxiety, depression, and arthritis in her fingers. On May 7, 2014, Dr. Drinnen completed a "Physical Residual Function Capacity Medical Source Statement," wherein he also responded to a variety of short-answers and multiple choice questions regarding the Plaintiff's work related limitations. [Tr. 542-546]. Dr. Drinnen explained that the Plaintiff suffered from depression and anxiety which caused fatigue, memory loss, decreased concentration, anxiety, and hopelessness. [*Id.*]. Dr. Drinnen stated that the Plaintiff's impairments have lasted since June 1, 2012. [*Id.*]. Dr. Drinnen opined that the Plaintiff would be "off task," unable to perform work and/or away from the work environment, more than 30% of an eight-hour work day. [*Id.*]. Dr. Drinnen also opined that the Plaintiff would be unable to retain work in a competitive work environment at eight hours per day, five days a week for a continuous period of six months or more because the Plaintiff would be unable to handle routine daily stress due to her severe depression. [*Id.*].

The ALJ gave Dr. Drinnen's medical opinion little weight, stating that his opinion: (1) was inconsistent with his own physical examinations of the Plaintiff; (2) was inconsistent with the fact that he never referred the Plaintiff for professional mental health treatment; (3) was inconsistent with the opinions of one-time consultative examiners Ellen Denny, Ph.D., and Jeffrey Summers, M.D.; and, (4) touched on matters that are reserved for the Commissioner. [Tr. 38-39].

The Plaintiff raises a number of alleged errors committed by the ALJ. First, the Plaintiff argues that the ALJ failed to identify the inconsistencies that exist in Dr. Drinnen's opinion versus his examinations of the Plaintiff. [Doc. 16 at 15-16]. The Commissioner argues that, like Dr. Braden, the ALJ identified the inconsistencies earlier in her decision. [Doc. 22 at 24].

15

While Dr. Drinnen opined in his Medical Source Statement that the Plaintiff's mental health issues, specifically her depression, were so severe that she would be unable to obtain and retain work [Tr. 545], the ALJ observed that Dr. Drinnen's treatment notes consistently noted that the Plaintiff was "in no acute distress and appearing well and well-nourished." [Tr. at 38 (citing Exhibits 4F, 14,F and 17F)]. While the Plaintiff reported varying levels of depression at times, Dr. Drinnen noted on March 13, 2014, that the Plaintiff's depression had improved with medication. [Tr. 37, 520]. Thus, the Court finds that the ALJ's finding that Dr. Drinnen's opinion was inconsistent with his own physical examinations is supported by substantial evidence.

Second, the Plaintiff maintains that Dr. Drinnen's failure to refer the Plaintiff for mental health treatment does not constitute "good reason" for discounting the opinion. [Doc. 16 at 16]. The Plaintiff states that while mental health treatment might have been beneficial to the Plaintiff, such inaction by the Plaintiff is not proof that there is an absence of mental health issues. [*Id.*]. The Court agrees with the Plaintiff and finds that the absence of additional mental health treatment does not constitutes "good reason" in this case. Dr. Braden, as the Plaintiff's primary care provider, was not disqualified to treat the Plaintiff simply because he did not specialize in mental health treatment. "[I]t is well established that primary care physicians (those in family or general practice) identify and treat the majority of Americans psychiatric disorders." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citation and internal quotations omitted). Moreover, that ALJ does not provide a basis as to why the Plaintiff should have been referred for additional or more specialzied mental health treatment. Nonetheless, because the ALJ provided other good reasons, supported by the record, the Court finds the ALJ's finding in this regard was harmless.

The Plaintiff also asserts that it was error to defer to the opinions of consultative examiners Drs. Denny and Summers because the ALJ did not properly weigh any of the medical opinions of

16

record consistent with the regulatory factors set forth in 20 C.F.R. §§ 404.1527(c), 416.927(c) and that "[t]he opinion of a consulting physician is not substantial evidence if contrary to the opinions of a treating physician. [Doc. 16 at 16-17]. The Commissioner responds that the discrepancies between Dr. Drinnen's opinion and the opinions expressed by Drs. Denny and Summers is a proper regulatory factor to consider and was only one of many factors the ALJ considered. [Doc. 22 at 25.].

The Court agrees with the Commissioner and finds that the ALJ did not solely rely on the contrary opinions of the consultative examiners to discount Dr. Drinnen's opinion. A competing medical opinion from a non-treating source identified with other substantial evidence in the record may constitute "good reason" for declining to give a treating source's opinion greater deference. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004) (substantial evidence supported rejection of a treating physician's opinion that the claimant could stand or walk no more than two hours in an eight-hour workday where there were contrary medical opinions in the record and other substantial evidence).

Moreover, the Plaintiff argues that as with Dr. Braden, the ALJ failed to identify which portion of Dr. Drinnen's opinion encroached on a matter that is reserved for the Commissioner. [Doc. 16 at 17]. Like Dr. Braden, Dr. Drinnen's Medical Source Statement concluded that the Plaintiff was unable to work. [Tr. 572]. Such a finding is not entitled to any deference, *See* 20 C.F.R. §§ 404.1527(d), 416.927(d), but nonetheless the ALJ considered the remaining opinion and provided other reasons for assigning it little weight.

Also like Dr. Braden, the Plaintiff argues that the ALJ failed to apply the factors set forth in 20 C.F.R. §§ 404.1527(c), 416.927(c) for determining the appropriate weight Dr. Drinnen's opinion was due. [Doc. 16 at 17]. The Plaintiff asserts that the ALJ again failed to note or consider

17

Dr. Drinnen's: length of treatment; the frequency of these examinations over the time span of treatment; and, the nature and extent of the treating relations. [*Id.*]. However, the Court finds that the ALJ specifically addressed several of the regulatory factors, including the length of treatment and the nature and extent of the treatment relationship when the ALJ recognized that the Plaintiff had been seeing Dr. Drinnen for approximately ten years and that Dr. Drinnen was the Plaintiff's primary care provider and exclusively treated the Plaintiff's depression, anxiety, and arthritis. Moreover, the ALJ addressed the supportability and consistent of the opinion by citing to inconsistencies between Dr. Drinnen's treatment notes and his Medical Source Statement, as well as citing to other medical opinions of record that opined less restrictive limitations than those reached by Dr. Drinnen.

Accordingly, the Court finds that substantial evidence supports the ALJ's assignment of little weight to Dr. Drinnen's opinion and the Plaintiff's allegations to the contrary are without merit.

## VI. CONCLUSION

Based upon the foregoing, it is hereby **ORDERED** that the Plaintiff's Motion for Judgment on the Administrative Record [**Doc. 15**] is **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 21**] is **GRANTED.**

**IT IS SO ORDERED**.

ENTER:

*Bruce Guyton*
United States Magistrate Judge